# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ALIN CHRISTOPHER PROPHETE,

    Plaintiff,

v.　　　　　　　　　　　　　　　　CASE NO.:  3:20-CV-514-BJD-LLL

LT. STERLING PEUGH, et al.,

    Defendants.
_____/

## **MOTION TO FOR SUMMARY JUDGMENT**

      The Defendants Peugh, Oliver, Cruz, Hampton, Williams, Bias, Davis, and Hood ("Defendants"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 56, requests that the Court enter summary judgment in favor of the Defendants, because the Defendants' use of force was reasonable and not maliciously nor sadistically done to cause the Plaintiff, and therefore no reasonable jury would find that the Defendants' use of force was excessive or violated the Plaintiff's constitutional rights.  The Defendants allege that (1) there is no genuine issue as to any material fact; and (2) these Defendants are entitled to a judgment.

1

## **Preliminary Statement and Background**

1. Plaintiff, Alin Christopher Prophete (hereinafter "Prophete" or "Plaintiff"), at the times alleged in the Third Amended Complaint ("Complaint") (Doc. 12), was a state prisoner in the custody of the Florida Department of Corrections ("FDC" or "the Department"). See FDC's Offender Search page, http://www.dc.state.fl.us/AppCommon (last visited July 27, 2022) (Alin C. Prophete, DC# B07712).

2. On May 22, 2020, the Plaintiff initiated this 42 U.S.C. § 1983 case alleging that on January 30, 2019[1], Defendant Peugh and five unknown correctional officers during a unnecessary forced cell extraction, to-wit:

> "…I was gratuitously beaten by the five [officers or sergeants] on the extraction team[.] I was beaten in the head with handcuffs and shackles that were used as brass knuckles[.] [M]y penis and my testicles were repeatedly struck as well…My lip was split bleeding profusely and had a cut on my penis and suffered extreme pain in my testicles."

(Doc. 1 at 6-7). The Plaintiff does not reference any sexual act, as defined by 18 U.S.C. § 2246. On October 14, 2020, Defendant Peugh served his answer denying the Plaintiff's allegations. (Doc. 19).

3. On December 21, 2020, the Plaintiff filed an amended complaint alleging a sexual act, as defined by 18 U.S.C. § 2246, perpetrated by the Defendants occurred during the forced cell extraction on January 30, 2019.

---

[1] All FDC records indicate that the forced cell extraction occurred on January 30, 2019.

(Doc. 25 at 3, 5-11).  On February 4, 2021, Defendant Peugh served his answer denying the Plaintiff's allegations.  (Doc. 31).

4.   On February 16, 2021, the Plaintiff filed a Second Amended Complaint again alleging excessive force and a sexual act, as defined by 18 U.S.C. § 2246, perpetrated by the Defendants occurred during the forced cell extraction on January 30, 2019.  (Doc. 39).  On February 4, 2021, Defendant Peugh served his answer denying the Plaintiff's allegations.  (Doc. 45).

5.   On March 13, 2021, the Plaintiff filed his Third Amended Complaint alleging excessive force and a sexual act, as defined by 18 U.S.C. § 2246, perpetrated by the Defendants on him during the forced cell extraction on January 30, 2019.  (Doc. 64).  On May 21, 2021, Defendants Peugh, Bias, Williams, Hampton, Cruz, and Oliver filed their answer denying the Plaintiff's allegations.  (Doc. 70).  On August 24, 2021, Defendants Davis and Hood filed their answer denying the allegations.  (Doc. 91).

6.   On September 16, 2021, the Plaintiff filed his Fourth Amended Complaint (the "complaint" or "operative complaint") alleging excessive force and a sexual act by the Defendants during the forced cell extraction on January 30, 2021.  (Doc. 95).  Plaintiff alleges that his anus was penetrated by open shackles before they were put on this ankles.  (Doc. 95 at 8).

## **DEFENDANTS' ALLEGATIONS**

1. On June 30, 2019, at approximately 10:07 hours, Plaintiff was causing a disturbance and refused all orders to cease. [Exs. A. Declaration of Defendant Peugh, Ex. J, Use of Force Report, Ex, I -1]. As a result, chemical agents were applied to Plaintiff's cell. [Id.]

2. A second application was applied when Plaintiff refused to cease his behavior. [Ex. J, I-2, handheld video]. The cell extraction team was used to remove Plaintiff from the cell when he refused to submit to restraints. [Exs. A; B, Declaration of Defendant Davis; C, Declaration of Defendant Hood; D, Declaration of Defendant Hampton; E, Declaration of Defendant Cruz; F, Declaration of Defendant Oliver, G; Declaration of Defendant Williams; H, Declaration of Defendant Bias, Ex. I-3, hand held video].

3. Only the minimal amount of force necessary to bring Plaintiff into compliance was applied by Defendants. [Id.]

## **Memorandum of Law**

### **I.**  **Standard for Summary Judgment.**

Summary judgment is proper if the pleadings and sworn statements show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).;

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986).  After the movant brings evidence to demonstrate that lack of a case for each element of the claim(s), the nonmovant must provide evidence to disputing each element, id. at 322, where all reasonable inferences, not implausible inferences, are made in that party's favor.  Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla., 285 F.3d 962, 970 (11th Cir. 2002).  To create an issue of fact for trial sufficient to defeat a well-support summary judgment motion, the non-movants evidentiary material must consist of more than conclusory, uncorroborated allegations from an affidavit or deposition.  West v. Higgins, 346 F. App'x 423, 425 (11th Cir. 2009) (unreported op.) (citing Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990)).  For the factual issues to be genuine, they must have a real basis in the record, and cannot be based merely on unsupported factual allegations.  Earley, 907 F.2d at 1081.

The Supreme Court has further stated that if "two parties tell different stories [where one] is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Morton v. Kirkwood, 707 F.3d 1276, 1284 (11th Cir. 2013).

Ultimately, "[t]he nonmovant need not be given the benefit of every inference but only of *every reasonable* inference." Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988) (emphasis added).

Also, a court need not consider a subsequent affidavit or declaration that contradicts prior testimony. See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). This rule (called the "Sham Affidavit Rule") prevents a party from creating an issue of fact "simply by submitting an affidavit[2] contradicting his prior testimony." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir. 1980) (quoting Perma Rsch. & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969))

**II. A REASONABLE JURY WOULD NOT FIND THE DEFENDANTS' USE OF FORCE WAS EXCESSIVE BECAUSE THE VIDEO AND DOCUMENTARY EVIDENCE SHOWS THAT THE DEFENDANTS' ACTIONS WERE NECESSARY TO RE-ESTABLISH ORDER AND MAINTAIN DISCIPLINE AFTER NUMEROUS WARNINGS FOR THE PLAINTIFF TO CEASE HIS DISRUPTIVE BEHAVIOR AND SUBMIT TO RESTRAINTS.**

---

[2] "The . . . sham affidavit rule applies with equal force to declarations." Hamilton v. Coffee Health Grp., 949 F. Supp. 2d 1119, 1126 (N.D. Ala. 2013).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986), the U.S. Supreme Court, in pertinent part, stated:

> "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a **genuine** issue for trial... there is no issue for trial unless there is **sufficient** evidence favoring the nonmoving party for a jury to return a verdict for that party." (Emphasis added).

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. R. Civ. P. 56(c). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–587, 106 S. Ct. 1348. (1986)(footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson</u>, 477 U.S. 242. "The mere scintilla of evidence in support of the [non-movant's] position will be insufficient. <u>Id.</u> at 252. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that

7

no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380.

In Burke v. Bowns, 653 F. App'x 683, 689 (11th Cir. 2016), the Defendants' moved for summary judgment, and the magistrate judge ordered the Defendants to produce the videotapes of the three use-of-force incidents which the Plaintiff alleged excessive uses of force by the prison guards. The Defendants produced only two of the three videotapes, and after reviewing the tapes, the magistrate judge issued a report and recommendation recommending summary judgment in favor of the Defendants, which the District Court Judge adopted, and thereafter, the Plaintiff filed his objection. Id. The Plaintiff's version of events in the complaint are wildly different than the Defendants' account of the events. Id. at 686–688. The Eleventh Circuit upheld the district court's ruling on all three events, including the September event, which was not videotaped, finding:

> "[T]he "core judicial inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7, 112 S.Ct. 995. However, "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9, 112 S.Ct. 995. Taking Plaintiff's account as true, the attack was no more than a "de minimis use of physical force." Id. at 9-10, 112 S.Ct. 995 ("The Eighth Amendment's prohibition of cruel and unusual

8

punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (quotation marks omitted)). First, the type of force allegedly used by Officer Tidwell was not "of a sort repugnant to the conscience of mankind." Id. at 10, 112 S.Ct. 995 (quotation marks omitted). Instead, it was materially similar to the "push or shove" referenced in Wilkins v. Gaddy, which "almost certainly fails to state a valid excessive force claim." 559 U.S. 34, 37–38, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010)…Thus, even taking Plaintiff's version of events as true, any force was de minimis, and the district court did not err in concluding that no genuine issue of material fact existed as to whether Officer Tidwell used excessive force in violation of the Eighth Amendment.[15]

In the alternative, even if the force used was not *de minimis*, it still did not run afoul of the Eighth Amendment. Here, it is undisputed that Officer Tidwell was struck by Plaintiff's bodily fluid and believed that Plaintiff had spit on him. And the record amply indicates that Plaintiff had a history of spitting on officers. Moreover, the amount of force used was minimal and appropriately calibrated to the threat posed by Plaintiff. Indeed, it is difficult to conceive of less severe force that Tidwell could have used in the circumstances. Accordingly, even assuming *arguendo* that Tidwell used more than *de minimis* force, that force was not malicious and sadistic; to the contrary, it was a good faith effort to restore discipline."

An excessive force claim under the Fourteenth Amendment requires application of the same standard as under the Eighth Amendment. Danley v. Allen, 540 F.3d 1298, 1306 (11th Cir. 2008). The test is whether the use of force "shocks the conscience and it necessarily will if the force was applied … maliciously and sadistically for the very purpose of causing harm." Id. at 1307(citations and quotations omitted).  The U.S. Supreme Court considers

9

five factors under the "shocks the conscience" test, as set forth in <u>Whitley v. Albers</u>, 475 U.S. 312 (1986):

> (1) the need for force; (2) the relationship between that need and the amount of force used; and (3) the extent of the resulting injury. In addition to those three factors we consider as fourth and fifth factors "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them, and any efforts made to temper the severity of a forceful response."

<u>Danley</u>, 540 F.3d at 1307 (citing and quoting <u>Whitley</u>, 475 U.S. at 321). "We have indicated previously that under the third factor, the initial use of pepper spray is not necessarily a constitutional violation." <u>See id.</u> The initial use of pepper spray does not cause any substantial or long-lasting injury and may be "'a very reasonable alternative to escalating a physical struggle.'" <u>Id.</u> (quoting <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1348 (11th Cir. 2002)). The extent of injury is only one factor in a Fourteenth Amendment excessive force claim and is not dispositive. <u>See Wilkins v. Gaddy</u>, 559 U.S. 34 (2010).

      The handheld videos contradict Plaintiff's allegations in nearly every aspect. [Ex.I-,1-3]. In the first video, Defendant Peugh can be seen in the video, asking Plaintiff to cease his disruptive behavior. [Ex. I-1] The camera shows Defendant Peugh approach Plaintiff's cell and gives Plaintiff a final warning and warns that if he does not cease, chemical agents will be used.

Plaintiff can be overheard saying that he is going to let the camera leave then he is going to start a disturbance. [Id.] Plaintiff complied with the order temporarily and the began his disturbance behavior. [Ex. 1-2] Chemical agents were used against Plaintiff, who covered himself with a blanket to prevent contact. [Id.] Chemical agents were applied to Plaintiff's cell. [Id.] Chemical agents were then applied again to Plaintiff for threatening staff. [Id.] Plaintiff was then asked to submit to hand restraints to be removed from his cell. [Ex. I-2-3].

When Plaintiff refused to submit to restraints to be removed from his cell, the cell extraction team entered Plaintiff's cell and removed him. [Id.] Plaintiff half attempted to comply with the strip search procedure so the Defendants entered, obtained Plaintiff's extremities and removed him from the cell.[Id.] The Defendants can be seen at all times in the cell. [Ex. I-3]

Plaintiff alleges that he was hit and punched. The Defendants movements do not demonstrate that they were punching and hitting. Since Plaintiff did not have any underpaints on when the Defendants breached his cell, it is likely that he may have been touched Plaintiff in their attempts to gain control of Plaintiff. Plaintiff initially made allegations that the was struck and touched.[Ex. L. Grievances].

Plaintiff made the allegation that he was penetrated in a grievance filed

11

in November of 2020. Plaintiff alleges that he was penetrated with the open end of shackles prior to the shackles being placed on his ankles. (Doc. 95, p8);[Ex. L,p2]. Plaintiff did not make those allegations when he was examined following the use of force. [Ex. K, Plaintiff's Physical Examination.]

When a Plaintiff alleges that he has been digitally penetrated, it becomes a matter for the jury. Sconiers v. Lockhart, 946 F.3d 1256, 1266 (11th Cir. 2020) see also Ricks v. Shover, 891 F.3d 468, 476 (3d Cir. 2018) ("Absent a legitimate penological purpose, the type of touching involved in … a body-cavity search would be undoubtedly cruel and unusual."); Ga. Code Ann. § 16-6-22.2 ("A person commits the offense of aggravated sexual battery when he or she intentionally penetrates with a foreign object the sexual organ or anus of another person without the consent of that person.").

However, this is not a case of digital penetration. This is a case wherein Plaintiff alleges that he was penetrated with shackles, while wearing no boxers. A review of the video demonstrates that even if Plaintiff's allegations were true, Plaintiff cannot prove that the incident occurred intentionally nor does he allege that the incident occurred intentionally. An intentional act is a require for a sexual battery as well as deliberate indifference.

There is nothing in the videos that shocks the conscious or evidences

that the Defendants applied force maliciously and sadistically for the very purpose of causing harm. The Defendants needed to use force to remove the Plaintiff from the cell. Plaintiff refused to cease from causing a disturbance and refused to submit to restraints even though he partially complied. All force applied was reasonable and the minimum necessary to maintain order and restore discipline. The Defendants request that the Court grant summary judgment in their favor.

## II.   FAILURE TO INTERVENE

Even when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim. Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir.2002). The plaintiff has the burden to demonstrate that the defendant was in a position to intervene but failed to do so. Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (citing Hadley v. Gutierrez, 526 F.3d 1324, 1330–31 (11th Cir. 2008)). The conduct of the officer must be more than gross negligence. Losey v. Thompson, 596 F. App'x 783, 788–89 (11th Cir. 2015). "'[T]he deliberate indifference standard—and the subjective awareness. Johnson v. Dixon, No. 3:14-CV-579-J-39PDB, 2015 WL 12851563, at *11 (M.D. Fla. Nov. 20, 2015), aff'd, 666 F. App'x 828 (11th Cir. 2016) (citing Losey, 596 F. App'x at 788–89 (citations omitted). To be held liable... an officer (1) must have observed

13

or had reason to know that excessive force would be or was being used, and (2) must have had both the opportunity and the means to prevent harm from occurring." Johnson, 2015 WL 12851563, at *10 (citations omitted).

Plaintiff states that Defendants Hood and Davis did not physically harm him but that they are liable because they failed to intervene on his behalf. (Doc. 95 at 8). Plaintiff alleges that Defendant Oliver was liable because he failed to intervene as he watched the entire cell extraction while blocking the view of the camera. (Doc. 95 at 8-9). The video of the cell-extraction does not reveal the need for anyone to intervene on Plaintiff's behalf. The Defendants would not acquire the required subjective awareness needed to support a failure to protect claim. Therefore, Plaintiff's claims against these Defendants should be dismissed.

### III. Defendants are Entitled to Qualified Immunity.

Qualified immunity addresses the problem that the threat of being sued may stymie an officer's ability to perform his duties effectively. Garczynski v. Bradshaw, 573 F.3d 1158, 1165–66 (11th Cir. 2009). Qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Thomas ex rel. Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir.

2001), cert. granted, judgment vacated sub nom. Thomas v. Roberts, 536 U.S. 953, 122 S. Ct. 2653, 153 L. Ed. 2d 829 (2002), and opinion reinstated, 323 F.3d 950 (11th Cir. 2003) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)) (additional quotations omitted). Qualified immunity allows government officials to carry out discretionary duties without the fear of personal liability or harassing litigation. Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

For qualified immunity to apply, the official must prove that the act was within the scope of his/her discretionary authority when the allegedly wrongful act occurred, Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991). Defendants assert that the incident occurred while Defendants were at work in the course of their duties. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) Defendants submit that there is no question that they were acting within their discretionary authority at all times during the allegations made in Plaintiff's complaint and were not aware of any violations of Plaintiff's constitutional rights.

## CONCLUSION

For all of the foregoing reasons, Defendants submit that summary judgment should be entered in their favor, and this action dismissed, with prejudice.

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850)456-6472
Facsimile: (850) 488-4872

/s/ Shirley Wilson Durham
Shirley Wilson Durham
Senior Assistant Attorney General
Florida Bar No. 0993204
Shirley. Durham@myfloridalegal.com

## CERTIFICATE OF SERVICE

On August 9, 2022, I certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF and furnished by U.S. Mail to: Alin C. Prophete, DC# B07712, Florida State Prison, P. O. Box 800, Raiford, FL 32083.

/s/ Shirley Wilson Durham
Shirley Wilson Durham
Senior Assistant Attorney General

# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ALIN CHRISTOPHER PROPHETE,

    Plaintiff,

v.                                  CASE NO.:  3:20-CV-514-BJD-JRK

LT. STERLING PEUGH, et al.,

    Defendants.

_____/

## INDEX TO EXHIBITS

1. Ex.  A.  Declaration of Defendant Peugh
2. Ex.  B.  Declaration of Defendant Davis
3. Ex.  C.  Declaration of Defendant Hood
4. Ex.  D.  Declaration of Defendant Hampton
5. Ex.  E.  Declaration of Defendant Cruz
6. Ex.  F.  Declaration of Defendant Oliver
7. Ex.  G.  Declaration of Defendant Williams
8. Ex.  H.  Declaration of Defendant Bias
9. Ex.  I.   Hand held videos of uses of force
    - 1- Chemical agents
    - 2- 2nd application of chemical agents
    - 3- Cell extraction video
10. Ex. J.    Use of Force Report
11. Ex. K.    Plaintiff's Physical Examination
12. Ex. L.    Grievances

17

Respectfully submitted,

**ASHLEY MOODY**
**ATTORNEY GENERAL**
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399-1050
Telephone: (850) 456-6472
Facsimile: (850) 488-4872

<u>/s/ Shirley Wilson Durham</u>
Shirley Wilson Durham
Senior Assistant Attorney General
Florida Bar No. 0993204
Shirley. Durham@myfloridalegal.com

## <u>CERTIFICATE OF SERVICE</u>

On August 9, 2022, I certify that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF and furnished by U.S. Mail to: Alin C. Prophete, DC# B07712, Florida State Prison, P. O. Box 800, Raiford, FL 32083.

<u>/s/ Shirley Wilson Durham</u>
Shirley Wilson Durham
Senior Assistant Attorney General